IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| HATTIE BURKE, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| ) | CIVIL ACTION FILE NO. |
| v. ) ) | |
| NOTEWORLD, LLC d/b/a NOTEWORLD SERVICING CENTER, ) ) ) | |
| Defendant. ) ) | |

## COMPLAINT- CLASS ACTION

COMES NOW Plaintiff Hattie Burke, on behalf of herself and all others similarly situated, and files this Complaint-Class Action as follows:

### I. Introduction

1.  This is a consumer class action brought on behalf of individuals subjected to Defendant's violations of the Georgia Debt adjusting Act, O.C.G.A. § 18-5-1, et seq. ("GDAA"). The provisions of the GDAA strictly regulate the business of debt adjusting and specifically limit the charges, fees, contributions, or combinations thereof that debt adjusters may charge to consumers such as the Plaintiff. Defendant violated the GDAA by failing to comply with its annual requirements for debt adjusters, by charging fees in excess of those authorized under the GDAA, and by holding client funds for periods longer than permitted by the GDAA.

### II. Jurisdiction and Venue

2.  Plaintiff Burke is an adult resident of Columbia County, in the State of Georgia. She resides at 315 Fairoaks Court, Martinez, GA 30907.

00316070 -3                                       1

3.     Defendant NoteWorld, LLC, d/b/a NoteWorld Servicing Center (hereinafter "NoteWorld"), is a Delaware company in the business of providing transaction management, processing services, payment collection and disbursement services in the debt adjusting industry, with its principal place of business in Tacoma, Washington.

4.     Defendant NoteWorld is authorized to do business, and regularly transacts business in the State of Georgia. NoteWorld can be served with process through its registered agent, Corporation Service Company, 40 Technology Parkway South #300, Norcross, Georgia 30092.

5.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because this case is (a) a class action (b) in which the Plaintiff is a citizen of a state different from Defendant and (c) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district.

### III. Georgia's Debt Adjustment Act

7.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully restated herein and further state as follows:

8.     The Georgia Debt Adjustment Act, OCGA § 18-5-1, defines debt adjusting as:

> [D]oing business in debt adjustments, budget counseling, debt management, or debt pooling service or holding oneself out, by words of similar import, as providing services to debtors in the management of their debts and contracting with a debtor for a fee to:
>
> (A)     Effect the adjustment, compromise, or discharge of any account, note or other indebtedness of the debtor;
>
> (B)     Receive from the debtor and disburse to his or her creditors any money or other thing of value.

9. From its initial creation by the Georgia General Assembly in 1956 until its amendment of July 1, 2003, the Georgia Debt Adjustment Act stated that *"[i]t shall be unlawful* for any person to engage in the business of debt adjusting" and that "[a]ny person who engages in the business of debt adjusting . . . shall be guilty of a misdemeanor." O.C.G.A. § 18-5-2 (1956) (emphasis added).

10. Thus, the original Act undeniably closed and locked the door for persons to offer debt adjusting for a fee in this state, unless incidental to the practice of law.

11. In 2003, the General Assembly substantially amended the Act. In the amendment's enabling clause, the legislature stated that the purpose is:

> To limit the maximum charge that may be imposed for the provision of debt adjustment services; to provide for definitions; to provide for exemptions from those provisions related to debt adjustment; to require persons engaged in debt adjusting to obtain an annual audit of all accounts and to maintain a certain amount and type of insurance coverage; to provide for the disbursement of a debtor's funds within 30 days of receipt; to require persons engaged in debt adjusting to maintain trust accounts for debtors' funds; to provide for civil and criminal violations and penalties; to provide for investigation and enforcement; to provide for related matters; to provide for an effective date; to repeal conflicting laws; and for other purposes.

2003 Laws No. 103 p. 392 (House Bill No. 385).

12. The amended Act thus removed the out-and-out prohibition on debt adjusting for a fee and cracked the door to allow debt adjusters to operate in Georgia as long as the Act's mandates are followed.

13. The amended Act commands that the debt adjuster "*shall* maintain a separate trust account for the receipt of any and all funds from debtors and the disbursement of such funds on behalf of debtors (OCGA § 18-5-3.2(b)); "*shall* disburse to the appropriate creditors all funds received from the debtor, less any fees authorized by [the Act], within thirty days of receipt

(OCGA § 18-5-3.2(a)); *shall* obtain annual audits from independent CPAs on all accounts in which Georgia debtors' funds have been deposited (OCGA § 18-5-3.1(a)(1)); *shall* obtain a specified level of insurance coverage for employee dishonesty depositor's forgery and computer fraud (OCGA § 18-5-3.1(a)(2)); and *shall not*:

> accept from a debtor who resides in this state, either directly or indirectly, any charge, fee, contribution, or combination thereof in an amount in excess of 7.5 percent of the amount paid monthly by such debtor to such person for distribution to creditors of such debtor . . .

OCGA § 18-5-2.

14. The amendment further provided for a civil remedy for a person's violation of the Act. OCGA § 18-5-4 states:

> Any person who engages in debt adjusting in violation of the provisions of [OCGA § 18-5-2 or § 18-5-3.2(a)] shall further be liable to the debtor in an amount equal to the total of all fees, charges, or contributions paid by the debtor plus $5,000.00. Such debtor shall have the right to bring a cause of action directly against such person for violation of the provisions of this chapter.

### III. General Allegations

15. Defendant is in the business of providing "Debt Adjusting" services to Georgia consumers as that term is defined by O.C.G.A. § 18-5-1.

16. Defendant is not exempt from the requirements of the GDAA.

17. Plaintiff and the proposed Plaintiff Class Members are residents of the State of Georgia who received debt adjusting services from the Defendant.

18. NoteWorld participates as part of an interrelated collection of companies and individuals that act in concert in the business of providing programs of debt adjusting, debt settlement, and/or debt management services (hereinafter collectively referred to as "debt adjusting programs") to residents of the State of Georgia.

19. NoteWorld "collects, processes, and disburses payments" from Georgia residents as an essential part of the debt adjusting programs. The debt adjusting programs claim to analyze the debtor's financial situation, negotiate with creditors to lower interest rates and principal amounts owed, and ultimately resolve debts on behalf of Georgia residents.

20. On information and belief, NoteWorld provides debt adjusting programs in conjunction with at least 100 entities. NoteWorld performs an integral part of each of these debt adjusting programs by providing transaction management and processing services as part of a comprehensive debt adjusting plan.

21. Plaintiff Burke participated in a debt adjusting program offered by Defendant in conjunction with a debt adjusting company known as Safe Trust Financial, Inc., f/k/a LifeGuard Financial a/k/a Global Logistics Enterprises a/k/a U.S. Debt Associates (hereinafter "Safe Trust"). Safe Trust was incorporated on September 3, 2009, and filed a petition for bankruptcy protection on February 7, 2011.

22. On information and belief, additional "front-end" debt adjusting companies with whom NoteWorld has partnered, as presently known, include Accredited Financial Corporation, Amber Network Inc., Best Debt Options, Beyond Financial Service, Brite Credit Inc. (d/b/a Brite Credit 1 2 3), Century Negotiations Inc., Clear Debt Solution, Coastal Debt Solutions LLC, Counsumerwise Debt Solutions, Inc., Counsel 4 Debt Relief, Countrywide Debt Solutions Inc., Credit Care Corporation, CreditCarePro, Debt Help Center USA, Debt National Relief, Debt Reinvestment, Debt Solutions, DebtEraseInc, Debt Pointer Inc., DebtPro LLC, DTS Financial Group, E.A.C. Financial LLC, Inc., FBL Associates, Freedom Debt Solutions, Help Settle LLC, Helpsettle.com, Innovative Debt Solutions, Lifeguard Financial, Maximum Debt Solutions, Morgan Stevens Financial Solutions Company, National Financial Freedom LLC, Nationwide

Consumer Advocacy Group, On Track Financial LLC, Personal Debt Systems of America, Princeton Debt Management LLC, Reduce My Debt, LLC, Settle A Debt Inc., Settlement Corporation of America, SilverLeaf Debt Solutions, The Debt Answer, The Debt Cure, US Consumer Support, Vision Debt.com, and World Debt Solutions.

23. "Front-end" companies, such as Safe Trust, contact consumers through marketing schemes offering debt adjusting services to consumers who have credit card debt or other unsecured debt.

24. NoteWorld, in partnership with various companies, executes the "back-end" debt adjusting services for consumers who have been successfully enrolled in debt adjusting programs by "front-end" debt adjusting companies such as Solve Debts and Safe Trust.

25. NoteWorld and Safe Trust acted jointly as a debt adjusting enterprise. Together she engaged in debt adjusting on behalf of the Plaintiff for a fee pursuant to a contract.

26. NoteWorld specifically engages in debt adjusting programs through standardized contracts with Georgia residents. The consumer is required to enter into an agreement with a "front-end" company, in addition to a "Sign-Up Agreement" with NoteWorld.

27. In consideration for program fees paid by the consumer, NoteWorld creates and administers a debt adjusting account to carry out the debt adjusting program as marketed by the "front-end" company. NoteWorld is authorized to automatically transfer monthly payments from the consumers' private bank account and into the debt adjusting account. The debt adjusting account purportedly accumulates funds to pay settlements with the consumers' creditors. NoteWorld then debits the consumers' debt adjusting account to pay for the fees charged by itself and the other debt adjusting companies. NoteWorld thus acts as the conduit for all payments and monetary transfers related to the debt adjusting programs.

28. On information and belief, at all times related to the allegations in this Complaint, NoteWorld was acting as an agent, co-conspirator or in a joint venture with Solve Debts and Safe Trust in all dealings with the Plaintiff.

29. On information and belief, NoteWorld is affiliated with other entities with whom the front-end debt adjusting companies also provide payment to perform services for the debt adjusting programs.

30. Defendant is not regulated and supervised by the Office of the Comptroller of the Currency, the Office of Thrift Supervision, the Federal Reserve, the Federal Deposit Insurance Corporation, the National Credit Union Administration, or the Georgia Department of Banking and Finance.

31. Defendant is not a bank, bank holding company, trust company, savings and loan association, credit union, credit card bank, or savings bank.

32. Plaintiff and Plaintiff Class Members were contacted through a telephone solicitation, internet solicitation and/or television advertising scheme employed to target consumers in the State of Georgia with personal financial troubles.

33. Plaintiff and Plaintiff Class Members entered into agreements with Defendant to pay a fee for debt adjusting services.

34. At the time of the solicitation, Plaintiff had incurred personal debt obligations in the amount of approximately $50,000, which she sought to be resolved.

35. Defendant debited from Plaintiff Burke's bank account $800 per month for 7 months for a total of $4,200 for services associated with the debt adjusting program. Of the money withdrawn from Plaintiff's account, Defendant maintained that at least $3400 was the program "fee" accepted for the proposed services.

36. Defendant did not disburse any portion of this money to the Plaintiff's creditors, and it held Plaintiff's funds in excess of thirty (30) days.

37. The money accepted by Defendant from Plaintiff exceeded 7.5 percent of the amount paid monthly by Plaintiff for distribution to her creditors.

38. Defendant did not negotiate the resolution of any of the Plaintiff's credit accounts.

39. The debt adjusting programs through which NoteWorld charges fees to Georgia residents is largely a scheme to swindle money from consumers on the promise that a debt adjusting program will be able to resolve their debts for pennies on the dollar. In actual practice, these debt adjusting programs charge exorbitant up-front fees, perform little or no service for the debtors, and subject the debtors to increases in their debts, lawsuits, and garnishments that might otherwise have been avoided.

40. NoteWorld is the backbone of the illegal debt adjusting industry and it facilities the unlawful conduct at issue in this case. Its contribution to the debt adjusting scheme is to provide payment processing, accounting, website interface, ACH transfers, and account reporting necessary to facilitate the debt adjusting scheme. Using NoteWorld's system, a "debt settlement" company needs only a telephone to solicit funds from Georgia residents.

41. The front-end companies that partner with NoteWorld regularly change names, dissolve, file for bankruptcy protection and otherwise evade legal pursuits by their clients who receive virtually no services for the fees she pay

### IV. Class Action Allegations

42. This action is brought by the Plaintiff individually and as a class action under the provisions of O.C.G.A. § 9-11-23 for damages and injunctive relief.

43. The class of Plaintiffs for whose benefit the named Plaintiff brings this action is defined as follows (referred to herein as the "Plaintiff Class Members"):

> All persons who reside in the State of Georgia from whom NoteWorld accepted, either directly or indirectly or in conjunction with any other company, after July 1, 2003, any charge, fee, contribution, or combination thereof in coordination with any company providing debt settlement/debt adjusting services to said person.

44. On information and belief, the named Plaintiff was solicited through a standard marketing scheme and Plaintiff was thereby offered Defendant's standard debt adjusting program. Such marketing and services are typical of those offered to the proposed Plaintiff Class Members.

45. Defendant also targets Georgia residents for Debt adjusting services through the website www.noteworld.com.

46. On information and belief, the fees collected by the Defendant from the proposed Plaintiff Class Members are uniformly assessed to every customer of Defendant and can readily be determined from a ministerial review of the records of the Defendant.

47. On information and belief, the contract entered into between Defendant and Plaintiff is a standard contract of adhesion entered into between Defendant and each of the clients that Defendant represents who reside in the State of Georgia.

48. The names and addresses of the Plaintiff Class Members can readily be determined through the records of the Defendant pertaining to collection of such charges, fees, contributions, or combinations thereof.

49. The fees charged by Defendant and its partner companies can be readily determined from a ministerial review of the Defendant's accounting records.

50. The membership of the class is numerous and joinder of individual plaintiffs is impractical. On information and belief, the Defendant has provided Debt adjusting services to thousands of residents of the State of Georgia since July 1, 2003.

51. There are questions of law and fact common to all members of the Plaintiff Class, and these common questions of law and fact predominate over any individual issues. The principle questions pertinent to the classes as a whole include:

   a) Whether the Defendant's standard means of doing business constitutes "Debt Adjusting" under O.C.G.A. § 18-5-1.

   b) Whether Defendant violated O.C.G.A. § 18-5-2 by accepting charges, fees, contributions, or combinations thereof in an amount in excess of 7.5 percent of the amount paid monthly by members of the Plaintiff class to Defendant for distribution to their creditors.

   c) Whether Defendant violated O.C.G.A. § 18-5-3.2 by holding funds received from a debtors for more than 30 days after receipt of such funds.

   d) The liability of Defendant for violation of the GDAA.

   e) The appropriate measure of damages and the appropriate remedies.

   f) Defenses raised by the Defendant.

   g) The availability of statutory damages pursuant to O.C.G.A. § 18-5-4.

   h) The need and appropriateness of injunctive relief.

52. The claims of the named Plaintiff are typical of the claims of the members of the Plaintiff Class, which all arise from the same operative facts and are based on the same legal theory, and Plaintiff's claims will thus adequately represent those of the Plaintiff Class Members.

53. The named Plaintiff will fairly and adequately protect the interest of the Plaintiff Class Members. Plaintiff has retained counsel with experience in class action litigation, and she are not aware of any interest that might cause them not to vigorously pursue this case.

54. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder is impracticable. The expense and burden of individual litigation make it virtually impossible for the members of the class to proceed individually, and it is therefore most efficient to resolve all claims based on the Defendant's conduct in one forum.

55. The Plaintiff is aware of no difficulties that will be encountered in the management of this litigation that would render the action unmanageable. This is not a class action that will require an analysis of the Defendant's conduct as to individual class members.

56. Plaintiff's and Plaintiff Class Members' claims against the Defendant are based on the Defendant's general practice of soliciting Georgia residents and accepting from them, either directly or indirectly, a standard charge, fee, contribution, or combination thereof in violation of O.C.G.A. § 18-5-2. The Defendant knowingly engages in this routine, standard practice, and its practice does not vary among members of the proposed Plaintiff Class Members. The standard charges, fee, contribution, or combination thereof can be determined from the Defendant's business records and specifically from the account statements generated by the Defendant for each Georgia resident.

57. The identity and addresses of the Plaintiff Class Members can be determined from the Defendant's business records and specifically from the account statements generated by the Defendant for each Georgia resident.

58. Prosecution of separate actions by individual members of the Plaintiff class would create adjudications that would be dispositive of the interests of the interests of the other members not parties to the adjudications.

59. Without a class action mechanism, members of the Plaintiff class would be substantially impaired or impeded in their ability to protect their interests. The value of claims of the individual class members would be in an amount that makes prosecution outside of the class action uneconomical.

60. The claims of the Plaintiff and Plaintiff Class Members are meritorious. The named Plaintiff believes she will prevail on the merits based upon the clear, unambiguous statutory provisions.

61. A final judgment on the merits of the named Plaintiff's claims would be fully dispositive of the claims and interests of those similarly situated who are not specifically named as a plaintiff in this action.

### V. Claims

### Count I – Violation of Georgia's Debt adjusting Act

62. Plaintiff incorporates the foregoing paragraphs as fully set forth herein.

63. Defendant is engaged in the business of providing "Debt Adjusting" services as that term is defined in O.C.G.A. § 18-5-1.

64. Defendant provided debt adjusting services to the named Plaintiff, and the Plaintiff Class Members while the named Plaintiff and Plaintiff Class Members resided in the State of Georgia.

65. In conjunction with one or more companies jointly acting to provide debt adjusting services, Defendant accepted from the named Plaintiff and Plaintiff Class Members, a charge, fee, contribution, or combination thereof in an amount in excess of 7.5 percent of the amount she paid monthly for distribution to her creditors.

66. Defendant did not disburse to the appropriate creditors all funds received from the named Plaintiff and Plaintiff Class Members, less any fees authorized by law, within 30 days of receipt of such funds.

67. Defendant's conduct violates the provisions of the Georgia Debt adjusting Act, and specifically O.C.G.A. § 18-5-2 and O.C.G.A. § 18-5-3.2.

68. Defendant is not exempt from the GDAA.

69. Due to said violation of the GDAA, pursuant to O.C.G.A. § 18-5-4(b)(2), NoteWorld is liable to the named Plaintiff and each Plaintiff Class Member, jointly and severally, in an amount equal to the total of all fees, charges, or contributions paid by each Plaintiff to the Defendant, plus statutory damages in the amount of $5,000.00.

## VI. Prayer for Relief

WHEREFORE, Plaintiff and the proposed Plaintiff Class Members pray for judgment and relief as follows:

    a. An order joining this lawsuit with any pending lawsuit in the Southern District of Georgia against Defendant;

    b. An order certifying that the action may be maintained as a class action;

c. Compensatory damages in an amount to be proven at trial, including any damages provided by statute;

d. A temporary, preliminary and/or permanent order enjoining the Defendant from continuing to charge fees in excess of those permitted by O.C.G.A. § 18-5-2;

e. A temporary, preliminary and/or permanent order disgorging the Defendants of all money collected, freezing the Defendant's assets, and requiring the Defendants to pay damages to the Plaintiff Class Members as required by O.C.G.A. § 18-5-4;

f. An order granting Plaintiff her expenses incurred in bringing and prosecuting this action, including attorney fees, expert fees, and costs to be paid out of any common fund procured for the Class;

g. Pre and post-judgment interest, if applicable;

h. A trial by jury; and

i. Such other and further relief as the Court may deem just, necessary, or appropriate.

Respectfully submitted,

*s/ Christopher A. Cosper*
DAVID E. HUDSON
Georgia Bar No. 374450
CHRISTOPHER A. COSPER
Georgia Bar No. 142020
*Attorneys for Plaintiff and the Class*

Of Counsel:

HULL BARRETT, PC
Post Office Box 1564
Augusta, Georgia 30903-1564
(706) 722-4481

ANGELA McELROY-MAGRUDER
GA Bar No.: 113625
Claeys McElroy-Magruder & Assoc.
512 Telfair Street
Augusta, GA  30901
(706) 724-6000

Dated: February 25, 2011.