IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| DIANNE MOREFIELD, on behalf of herself and all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>NOTEWORLD, LLC d/b/a NOTEWORLD SERVICING CENTER,<br><br>  Defendant. | CIVIL ACTION FILE NO.<br>1:10-CV-00117 |
| HATTIE BURKE, on behalf of herself and all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>NOTEWORLD, LLC d/b/a NOTEWORLD SERVICING CENTER,<br><br>  Defendant. | CIVIL ACTION FILE NO.<br>1:11-CV-00029 |

O R D E R

Before the Court are Plaintiffs' motions for (1) final settlement class certification, final approval of class settlement, and dismissal (1:10-CV-00117, doc. no. 59; 1:11-CV-00029, doc. no. 30), and (2) approval of class representative service awards, administrative expenses, and attorneys' fees and

expenses (1:10-CV-00117, doc. no. 60; 1:11-CV-00029, doc. no. 31). Dianne Morefield, Hattie Burke, and Peggy Stewart (the "Representative Plaintiffs") are seeking final approval of their settlement with Defendant NoteWorld, LLC ("NoteWorld").[1] The Court concludes that the settlement represents a fair, reasonable, and adequate compromise of the claims involved. Thus, for reasons more fully articulated below, the pending motions are **GRANTED**.

## I. BACKGROUND

In these class action lawsuits (the "Actions"), Plaintiffs allege that NoteWorld accepted charges, fees, contributions and/or combinations thereof from the Representative Plaintiffs and the settlement class on or after July 1, 2003, which, when considered in conjunction with the total fees charged to Georgia residents participating in debt settlement/debt adjusting plans ("Debt Settlement Plans") administered by third-party debt settlement companies ("DSCs"), exceeded those permitted by the Georgia Debt Adjustment Act (the "Act"), O.C.G.A. §§ 18-5-1 to -

---

[1] This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332(d)(2): "The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant." Here, Representative Plaintiffs Morefield and Burke are Georgia citizens and Defendant NoteWorld is a Delaware limited liability company with its principal place of business in Washington. See 28 U.S.C. § 1332(d)(10) ("For purposes of [class actions], an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."). Moreover, the amount in controversy as alleged exceeds $5,000,000.

2

4. NoteWorld denied the allegations contained in Plaintiffs' claims and denied that its conduct is prohibited by the Act.

In October of 2011, the Representative Plaintiffs entered into a settlement agreement with NoteWorld whereby the parties agreed to settle the Actions. The result of the settlement agreement is a dismissal with prejudice of the claims of Representative Plaintiffs and the settlement class and a release of NoteWorld.

On the parties' motion, the Court entered an Order on January 6, 2012 that (1) preliminarily certified a class for settlement purposes; (2) preliminarily approved the class settlement; (3) confirmed class counsel; (4) appointed a settlement administrator, (5) directed that notice be issued to the class; and (6) stayed prosecution of the released claims. On March 29, 2012, the Court held a final fairness hearing, at which time it considered the fairness of the proposed settlement of this class action and provided an opportunity for any objectors to raise any objections to the settlement and the final certification of the class for settlement purposes. No objections were made in writing and filed with the Clerk of Court, and no objections were made at the March 29, 2012 hearing.

## II. DISCUSSION

"Settlement agreements are highly favored in the law and

3

will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1105 (5th Cir. 1977). Before a settlement may be finally approved, however, a number of prerequisites must be established. First, the Court must certify the settlement class. Fed. R. Civ. P. 23(c). Second, the Court must determine whether the settlement class members were given reasonable notice of class certification and settlement. See In re Checking Account Overdraft Litig., No. 09-MD-02036-JLK, 2011 WL 5873389, at *6 (S.D. Fla. Nov. 22, 2011); Fed. R. Civ. P. 23(c)(2), (e)(1). Finally, the Court must evaluate the settlement's fairness and adequacy. Fed. R. Civ. P. 23(e)(2); see also In re Checking Account Overdraft Litig., 2011 WL 5873389, at *9.

**A. Final Settlement Class Certification**

The settlement class is defined by the parties' settlement agreement as follows:

> All persons residing in the State of Georgia (a) with whom NoteWorld entered into a Sign-Up Agreement in relation to a debt adjusting program, and/or (b) from whom NoteWorld accepted, either directly or indirectly, any charge, fee, contribution, or combination thereof in relation to a debt adjusting program, between and including July 1, 2003 and July 29, 2011.

(Settlement Agreement ¶ 9(i).)

4

To certify a class for settlement purposes the Court must determine whether the prescriptions of Federal Rule of Civil Procedure 23 are satisfied. Specifically, certification requires that each of the four factors set out in Rule 23(a) are satisfied, along with at least one of the conditions under Rule 23(b). Upon review, the Court finds that the settlement class satisfies the requisite Rule 23 factors detailed below.

*1. Numerosity*

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. Hammett v. Am. Bankers Ins. Co., 203 F.R.D. 690, 694 (S.D. Fla. 2001). The settlement class in this action consists of over 7,000 members. Therefore, the Court finds that the numerosity requirement of Rule 23(a)(1) is met. See Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) ("[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, [and] more than forty [is] adequate . . . ." (internal quotations omitted)).

*2. Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have

5

engaged in a standardized course of conduct that affects all class members." In re Terazosin Hydrochloride, 220 F.R.D. 672, 687 (S.D. Fla. 2004) (citing Roper v. Consurve, Inc., 578 F.2d 1106, 1113 (5th Cir. 1978)). Here, commonality is satisfied because NoteWorld is alleged to have injured each of the class members in precisely the same way, i.e., by charging fees in excess of those permitted by law.

3. *Typicality*

Typicality under Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Here, the Representative Plaintiffs' claims are typical of those of the settlement class because, as alluded to above, the claims of each class member concern the same conduct by NoteWorld, allege the same harm, and arise from the same legal theories. See Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984) (finding typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory").

4. *Adequacy*

Adequacy under Rule 23(a)(4) is queried through the following: "(1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake the

litigation at issue." In re Checking Account Overdraft Litig., 275 F.R.D. 654, 659 (S.D. Fla. 2011). Adequacy is satisfied in this case because there are no conflicts of interest between the Representative Plaintiffs and the settlement class. Furthermore, the Court has appointed as class counsel the law firms of Hull Barrett, P.C. and Claeys, McElroy-Magruder & Kitchens, and counsel's competence is shown both through prior class action litigation experience and their efforts in the present action.

5. *Predominance and Superiority*

Finally, Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The Court finds this factor satisfied. The legal claims of each class member as they relate to the alleged misconduct by NoteWorld are identical, and prosecution of those claims would, therefore, be nearly identical. Accordingly, the Court can discern no great need for individual control of the class members' claims. Furthermore, a single, coordinated proceeding is superior to thousands of discrete and disjointed suits addressing precisely the same legal issue. Finally, there does not appear to have been any difficulty in managing the settlement class, nor does the Court

7

foresee any such difficulty arising in the future.

   *6. Conclusion*

   Upon the foregoing, the motion for final class certification is **GRANTED**.

**B. Certification and Settlement Notice**

   Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The Court previously approved individual mailed notice to each class member. That notice included each of the elements set out in Rule 23(c)(2)(B)(i) - (vii), adequately apprising these members of the nature of the action and allowing for exclusion from the settlement class. Therefore, the Court finds that the notice issued in this case satisfies the demands of Rule 23(c)(2)(B).

   As to settlement, Rule 23(e)(1) requires that the Court "direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." The notice issued in this case informed class members of the nature of the action, all claims, defenses, and issues raised therein, as well as the effect of the settlement. For these reasons, the Court also finds that the notice issued in this case meets the standard set

out in Rule 23(e)(1). Finally, because the notice was "reasonably calculated to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections," SR 7 Leasing, Inc. v. Curtis, 189 F.R.D. 681, 683 (M.D. Ala. 1999), the demands of constitutional due process are satisfied.

## C. Final Settlement Approval

A settlement may be approved only if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "A settlement is fair, reasonable and adequate when the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." In re Checking Account Overdraft Litig., 2011 WL 5873389, at *9. In determining whether a settlement is fair and adequate, the Court considers several factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.

Su v. Electronic Arts, Inc., No. 6:05-cv-131-Orl-28JGG, 2006 WL 4792780, at *3 (M.D. Fla. Aug. 29, 2006) (citing Leverso v. South Trust Bank of Ala., Nat. Assoc., 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).

After a thorough review of the record, the Court concludes

9

that final approval of the settlement is in order. To begin, there is no evidence of fraud or collusion, and the claims against NoteWorld involve thousands of individuals and accounts over which litigation could last for years. Moreover, the factual record appears to have been sufficiently developed to allow the parties to identify the precise issues in contention and appreciate the merits of their respective claims and defenses. Yet, at the same time, the settlement comes at a point early enough in the proceedings that class members and NoteWorld will be spared additional, and perhaps redundant, expenses. In addition, the legal claims asserted involve unsettled questions of law; this uncertainty discounts the likelihood of success on the merits while simultaneously bolstering the attractiveness of compromise for settlement class members. As further evidence of the fairness of the settlement, the amount of the settlement fund - $1,040,000 - exceeds the amount of fees collected by NoteWorld from class members, and the parties have indicated that this pool of funds would be depleted by continued litigation. The parties' experienced counsel agree that the settlement is fair, reasonable, and mutually beneficial under the present circumstances. Finally, no objections have been filed to the settlement. In light of this record, the Court finds that the parties' settlement is fair, reasonable, and adequate.

Furthermore, the Court hereby approves the establishment and administration of the cy pres fund, as contemplated by paragraph 14 of the settlement agreement, in favor of Goodwill Industries of Middle Georgia, Inc. The Court **ORDERS** class counsel to update the Court at the appropriate time so this Court and class counsel can establish the amount of the cy pres fund and the Court can oversee and administer the disposition of the cy pres fund with the assistance of class counsel, pursuant to the settlement agreement.

After thorough review, the motion for final approval of the parties' settlement is **GRANTED**.

**D. Approval of Class Representative Service Awards, Administrative Expenses, and Attorneys' Fees and Expenses**

*1. Representative Service Awards*

Service awards compensate class representatives for services provided and risks incurred during the class action litigation on behalf of other class members. In re Checking Account Overdraft Litig., 2011 WL 5873389, at *20. In this case, the Representative Plaintiffs expended time and effort by initiating and/or aiding in the prosecution of the class action, notwithstanding the legal uncertainty surrounding their claims. For that, they deserve to be compensated. The amount of the requested service awards - $5,000 per Representative Plaintiff - is fair and reasonable. See id. (awarding $5,000 per class

representative). The service awards, totaling $15,000, are therefore **APPROVED**.

*2. Administrative Expenses*

R. Lynne Hamrick, a paralegal at the law firm of Hull Barrett, P.C., was appointed settlement administrator. She was charged with administering notice to the class members and monitoring the parties' performance, including, but not limited to, supervising and accrediting all actions required by NoteWorld pursuant to the settlement agreement and the Court's preliminary approval Order. As shown by the affidavit of Christopher A. Cosper, a class member attorney, and documents attached thereto, the settlement administrator has incurred actual expenses in the amount of $14,898.44. An additional $6,000 to $8,000 in expenses is anticipated to complete administration of the settlement agreement, including the printing and disbursement of settlement checks, and these anticipated expenses are in-line with those already incurred. Finally, a fee of $4,000 to $6,000 to the administrator has been included in the request. The Court hereby **APPROVES** the request for administrative expenses in the amount of $27,266 as fair and reasonable.

*3. Attorneys' Fees and Expenses*

Class counsel has requested a fee of 33 1/3% of the settlement fund for its efforts in litigating the case and

facilitating the settlement. A court must look to a number of factors when assessing the reasonableness of attorneys' fees in class action settlements:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases.

Camden I Condominium Ass'n, Inc. v. Dunkle, 946 F.2d 768, 772 n.3 (11th Cir. 1991). Applying these factors here, the Court concludes that the requested award is fair and reasonable. Class counsel has exercised diligence in investigating the facts, researching the law, prosecuting these Actions, and facilitating settlement. The Actions presented novel questions of law, and counsel's knowledge and experience in class action litigation were necessary to shepherd the claims through the litigation process. The results obtained for the settlement class are, for reasons already noted, favorable to class members, and no class member has objected to the requested award. Finally, the requested award is consistent with other such awards in the Eleventh Circuit. See, e.g., In re Checking Account Overdraft Litig., 2011 WL 5873389, at *28 (awarding fees

of 30% of settlement); <u>Allapattah Servs., Inc. v. Exxon Corp.</u>, 454 F. Supp. 2d 1185, 1241 (S.D. Fla. 2006) (awarding fees of 31 1/3% of settlement).

Class counsel also requests $2,126.73 in litigation expenses. The affidavit of Christopher Cosper and an itemized report show the expenses to be attributable to mediation, research, copying, postage, and long distance phone charges. The Court finds these expenses to be fair and reasonable as they relate to Counsel's efforts to facilitate settlement of the case. Class counsel's requested attorneys' fees and expenses are therefore **APPROVED** – class counsel shall receive $346,666.66 in attorneys' fees and $2,126.73 in expenses.

4. *Conclusion*

The motion for award of class representative service awards, administrative expenses, and attorneys' fees and expenses is **GRANTED**.

### IV. CONCLUSION

For the reasons detailed above, Plaintiffs' motions for (1) final settlement class certification, final approval of class settlement, and dismissal (1:10-CV-00117, doc. no. 59; 1:11-CV-0029, doc. no. 30), and (2) approval of class representative service awards, administrative expenses, and attorneys' fees and expenses (1:10-CV-00117, doc. no. 60; 1:11-CV-0029, doc. no. 31) are hereby **GRANTED**.

1. Accordingly, the Court: (1) **FINALLY CERTIFIES** the settlement class pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), (c), and (e); (2) **FINALLY APPROVES** the settlement; (3) **AWARDS** each Representative Plaintiff a class representative service award of $5,000; (4) **AWARDS** the firm of Hull Barrett, P.C. $27,266 in settlement administration expenses; (5) **AWARDS** class counsel attorneys' fees of 33 1/3% of the settlement common fund plus $2,126.73 in expenses; (6) **DIRECTS** class counsel, Representative Plaintiffs, and NoteWorld to implement and consummate the settlement according to its terms and conditions; (7) **DISMISSES WITH PREJUDICE** all released claims of the Representative Plaintiffs and each class member; and (8) **RETAINS** jurisdiction for the purpose of enforcing this Order or the terms of the settlement agreement, including the administration of the cy pres fund.

The terms of the settlement agreement and of this Final Order shall be forever binding on the Representative Plaintiffs and class members, except the successful opt-outs, as well as their heirs, executors and administrators, successors and assigns, and anyone acting on behalf of class members, or for their benefit. Those terms shall have res judicata and other preclusive effect in all pending and future claims, lawsuits, or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits, or other

proceedings involve the released claims. Neither this Order nor any aspect of the settlement agreement is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of NoteWorld. NoteWorld specifically denies any liability. Each of the parties entered into the settlement agreement with the intention to avoid further disputes and litigation with the attendant risk, inconvenience, and expenses.

The release of claims, as set forth in the settlement agreement, is expressly incorporated herein in all respects and is effective as of the date of this Final Order, and the parties and class members, except the successful opt-outs, shall thereupon be fully, finally, and forever released from all released claims and other matters within the scope of the release contained in the settlement agreement. The release will apply to all class members, except the successful opt-outs, irrespective of the class member's actual receipt of payment under or other participation in the settlement agreement by any class member. Accordingly, as of the date of the Final Order, the parties and class members, except the successful opt-outs, are forever barred and enjoined from commencing, prosecuting, or continuing to prosecute, either directly or indirectly, in this or any other jurisdiction or forum, any of the claims that are released by the settlement agreement or barred by the entry of

judgment in these Actions.

Nothing in this Final Order, however, shall preclude any action to enforce the terms of the settlement agreement, nor shall anything herein preclude the Representative Plaintiffs or other class members from participating in the settlement administration process described in the settlement agreement if they are entitled to do so under the terms of the settlement agreement.

**ORDER ENTERED** at Augusta, Georgia, this 18th day of April, 2012.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA